IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:19-CT-03040-M

| | |
|---|---|
| MATTHEW JAMES GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SERGEANT DAVES, et al., ) | |
| ) | |
| Defendants. ) | |

This cause is before the court on defendants' motion for summary judgment [D.E. 86], and plaintiff's pending motions, [D.E. 129, 131]. For the reasons discussed below, plaintiff's motions are denied, and defendants' motion for summary judgment is granted.

Relevant Procedural History:

On February 5, 2019, Matthew James Griffin ("plaintiff"), then a North Carolina inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 8]. Plaintiff alleges, in relevant part, that defendants used excessive force by tightly "cross belting" him during transport from Central Prison to Alexander C.I. on April 19, 2018, causing him pain, difficulty breathing, and loss of consciousness, and that defendants were deliberately indifferent when they taunted him and denied his requests for medical attention. See Compl. [D.E. 1]; Am. Compl. [D.E. 9]; 2d. Am. Compl. [D.E. 72-1].

On April 23, 2019, the court allowed claims arising out of plaintiff's transport from Central Prison to Alexander C.I. on April 19, 2018, (the "transport incident"), to proceed against Sergeant Daves ("Daves") and a John Doe defendant. See Order [D.E. 10].

On September 25, 2019, Daves answered the complaint. [D.E. 24].

On January 8, 2020, this case was reassigned to the undersigned judge via a text order.

On August 31, 2020, plaintiff moved to substitute Joseph Parlier ("Parlier") for the John Doe defendant. Mot. [D.E. 67].

On September 10, 2020, plaintiff moved for leave to file a second amended complaint, Mot. [D.E. 72], and attached a proposed second amended complaint, see [D.E. 72-1].

On January 7, 2021, the court, granted the motion substitute, granted the motion for leave to file a second amended complaint, allowed the second amended complaint to proceed against Parlier, and stayed the deadline for filing dispositive motions. Order [D.E. 73].

On May 9, 2021, Parlier answered the second amended complaint. [D.E. 81].

On May 19, 2021, the court lifted the stay and set a motions deadline. Order [D.E. 82].

On July 12, 2021, defendants moved for summary judgment, Mot. [D.E. 86], and filed a memorandum support with an attached appendix and statement of material facts, see [D.E. 87].

On July 13, 2021, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about defendants' pending motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 89].

On July 30, 2021, plaintiff objected to defendants' statement of facts, [D.E. 91], and moved to strike this filing for failing to comply with the local civil rules, Mot. [D.E. 92].

On August 10, 2021, plaintiff moved for an extension of time to respond to defendants' motion for summary judgment, Mot. [D.E. 94], and the court granted the motion, Order [D.E. 95].

On September 7 and 20, 2021, plaintiff moved to stay the proceedings. [D.E. 97, 98].

On October 1 and 5, 2021, plaintiff notified the court of his new address at Lea County Correctional Facility in New Mexico. [D.E. 99, 100].

On October 19, 2021, the court: granted in part plaintiff's motion to strike; directed defendants to refile a statement of material facts, memorandum, and an appendix that comply with local civil rules; directed defendants to confer with New Mexico prison officials to ensure that plaintiff had access to the legal materials needed to respond to the motion for summary judgment; granted in part plaintiff's motions to stay; and allowed plaintiff an extension of time until December 9, 2021, to respond to the motion for summary judgment. Order [D.E. 101].

On November 8, 2021, plaintiff filed a declaration [D.E. 102], numerous documents in support [D.E. 102-1], an exhibit list [D.E. 102-3], a partial response in opposition to defendants' motion for summary judgment [D.E. 103], and a certificate of service [D.E. 104].

On November 9, 2021, the court directed defendants to show cause by November 12, 2021, why they had failed to comply with the court's October 19, 2021, order. Order [D.E. 105].

On November 12, 2021, defendants filed a statement of facts [D.E. 107], a memorandum [D.E. 108], an appendix [D.E. 109], and a response to the court's order to show cause [D.E. 110].

On November 17, 2021, pursuant to the court's October 19, 2021, order, defendants timely filed notice confirming that plaintiff had access to his legal materials in New Mexico. [D.E. 111].

On November 18, 2021, plaintiff moved to rescan documents at docket entry 102 in the correct order and to correct the docket entry at 104. Mot. [D.E. 112].

On November 22, 2021, plaintiff moved to strike defendants' docket entries at 107, 108, and 109, because they were filed out of time and without leave of the court. Mot. [D.E. 113].

On November 29, 2021, plaintiff filed objections, [D.E. 114], and moved for an extension of time to file documents opposing defendants' motion for summary judgment, Mot. [D.E. 115].

On November 30, 2021, plaintiff filed a statement of material facts. [D.E. 116].

On December 3, 2021, plaintiff filed an appendix to his statement of facts. [D.E. 118].

On December 10, 2021, plaintiff moved for an extension of time to file documents, Mot. [D.E. 119], and responded in opposition to defendants' motion for summary judgment, [D.E. 120].

On December 17, 2021, the court denied plaintiff's motions to rescan documents, to strike, and for an extension of time; directed defendants, not later than January 10, 2022, to file to file all grievances plaintiff submitted between April 19 and September 1, 2018, and all responses to such grievances; and allowed plaintiff until January 25, 2022, to file a sur-reply. Order [D.E. 121].

On January 7, 2022, plaintiff moved to strike his prior declaration, Mot. [D.E. 122], and to apply the prison mailbox rule and deem timely filed his response in opposition, Mot. [D.E. 123].

On January 10, 2022, defendants filed a response to the court's December 17, 2021, order, together with a letter from the Inmate Grievance Resolution Board, copies of completed Step 3 grievances, and copies of plaintiff's Step 1 and Step 2 grievances. See Defs.' Resp. [D.E. 124].

On January 24, 2022, plaintiff moved both to require the production of legible copies, Mot. [D.E. 125], and to "strike sham exhibit [sic]," Mot. [D.E. 126].

On January 27, 2022, the court: denied plaintiff's motions to strike documents but granted the motions to the extent he requested the court review his filings; granted the motion to apply the prison mailbox rule; deemed timely filed plaintiff's response in opposition; granted the motion to require the production of legible copies; directed defendants to file maximally legible copies by February 4, 2022; allowed plaintiff until February 22, 2022, to file any further argument as to exhaustion; and warned the parties that no extensions of time would be granted. Order [D.E. 127].

On February 2, 2022, plaintiff filed a sur-reply in opposition to defendants' motion for summary judgment, [D.E. 128], and moved for an extension of time, Mot. [D.E. 129].

4

On February 4, 2022, defendants filed legible copies of requested documents. [D.E. 130].

On February 14, 2022, plaintiff sought relief from the court's prior order. Mot. [D.E. 131].

On February 16, 2022, plaintiff filed an "objection" to the court's prior order. [D.E. 132].

## Plaintiff's Pending Motions:

Plaintiff requests a 14-day extension of time to file a sur-reply arguing, because defendants filed illegible documents, he cannot meet the January 25, 2022, deadline. Mot. [D.E. 129] at 4. The motion was signed January 23 and postmarked January 26, 2022. See id. at 7; [D.E. 129-2].

Because the court's January 27, 2022, order allowed plaintiff until February 22, 2022, to file further argument as to exhaustion and warned that no further extensions would be granted, Order [D.E. 127], and because the court received a sur-reply from plaintiff as to exhaustion, see [D.E. 128], the court DENIES AS MOOT this motion for an extension of time [D.E. 129].

In his February 14, 2022, motion, plaintiff asserts he is entitled to partial relief from the January 27, 2022, order that found his handwritten notation of transfers insufficiently probative to support his January 24, 2022, motion to strike. Mot. [D.E. 131] at 1–2. Plaintiff submits "new evidence," purportedly "defendants own records of external transfers between Central Prison (3100), Alexander Correctional Institution (4870), and Warren Correctional Institution (4290)." Id. at 2–3. Plaintiff alleges this transfer record accords with his handwritten record such that the court erred in its finding. Id. at 3. Plaintiff asserts that, because this transfer record reflects that he was incarcerated at Alexander C.I. on May 31, 2018, defendants' exhibit, indicating that he was at Warren C.I. on that date, is a "sham exhibit." Id. (citing Defs.' Resp. [D.E. 124-3] at 6). Plaintiff further asserts that, because the exhibit denotes his location at Warren C.I., this exhibit, which relates exhaustion, "was necessarily created after" plaintiff's transfer to Warren C.I. on May

5

3, 2019. Id. at 4. Thus, plaintiff contends, defendants' exhibit in question "must be stricken as a sham exhibit." Id. Plaintiff attaches an August 15, 2020, document, marked "confidential," that appears to reflect his external movements in North Carolina custody. See [D.E. 131-1] at 2.

In his February 16, 2022, "objection" to the court's prior order, plaintiff reiterates these arguments and contends that his location on May 31, 2018, cannot be determined on summary judgment such that the exhaustion issue should be resolved in his favor. See [D.E. 132] at 1–3.

Although plaintiff seeks relief under Federal Rule of Civil Procedure 60, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). A court may revise an interlocutory order in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice. Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

Here, there has been no subsequent trial or change in applicable law. See id. Further, although plaintiff now files an additional document purporting to demonstrate that he was housed at Alexander C.I. on May 31, 2018, not at Warren C.I., as ostensibly indicated on defendants' exhibit in question, the court discerns no "clear error causing manifest injustice" in its order declining to strike this exhibit. See id. Accordingly, the court DENIES the motion [D.E. 131].

Defendants' Motion for Summary Judgment:

1) Parties' Arguments:

Defendants argue, among other things, that plaintiff failed to exhaust his administrative remedies as to the claims raised in this complaint. See Defs.' Mem. [D.E. 108] at 7–9.

6

Plaintiff, in relevant part, argues that the administrative grievance procedure was "unavailable" to him because: 1) his timely May 10, 2018, grievance was "never processed or filed"; 2) his timely July 17, 2018, grievance was wrongfully held by a prison employee until July 19, 2018, and then erroneously rejected as "already resolved" and for exceeding the 90-day time limit; and 3) his August 30, 2018, grievance as to the failure of prison staff to process properly his putative July 17, 2018, grievance also was not processed. See 2d Am. Compl. [D.E. 72-1] at ¶60; Pl.'s App. [D.E. 118-1] at 84–103; Pl.'s Resp. [D.E. 120] at ¶¶19–23; Pl.'s Sur-Reply [D.E. 128] at ¶¶1–18; Pl.'s 2d Decl. [D.E. 128-1] at ¶¶5–15.

2) Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

7

3) Discussion:

The Prison Litigation Reform Act ("PLRA") states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation, alteration, and internal quotation marks omitted); see Booth v. Churner, 532 U.S. 731, 741 (2001) (noting the PLRA requires exhaustion of administrative remedies "regardless of the relief offered through administrative procedures.").

Failure to exhaust available administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Although "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are," Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted) ("Moore"), administrative exhaustion is mandatory only if the grievance process is "available" to the prisoner, Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."

8

Moore, 517 F.3d at 725. Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 643–44 (citations omitted). PLRA exhaustion and availability of administrative remedies are questions of law to be resolved by the court. See Baxley v. Jividen, 508 F. Supp. 3d 28, 47 (S.D.W. Va. 2020) (citation omitted).

The North Carolina Department of Public Safety ("DPS") has a three step Administrative Remedy Procedure ("ARP") for resolution of prison grievances. See Moore, 517 F.3d at 721–22; see also Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) ("North Carolina prisoners can satisfy the [PLRA's] exhaustion requirement by completing all three of the steps of the inmate grievance process, which culminates in the rendering of a decision upon the prisoner's appeal by the North Carolina Inmate Grievance Resolution Board.").

This ARP first encourages informal resolution. See DPS ARP § .0301(a), available at https://files.nc.gov/ncdps/div/Prisons/Policy_Procedure_Manual/G.0300_08_01_13.pdf (visited Mar. 14, 2022). If informal resolution is unsuccessful, the "inmate may submit a written grievance on Form DC-410." Id. at § .0310(a)(1). Within three days of submission, a screening officer reviews the Step One grievance to "decide whether it should be accepted, rejected, or returned." Id. at § .0310(a)(4). If unsatisfied with the screening officer's Step One decision, the inmate may request relief from the Facility Head ("Step Two"). Id. at § .0310(b)(1). If unsatisfied with Facility Head's decision, the inmate may appeal the grievance to the Secretary of Public Safety through the inmate grievance examiner ("Step Three"). Id. at § .0310(c)(1). "The

9

decision by the [Inmate Grievance Examiner] or a modification by the Secretary of Public Safety shall constitute the final step of the Administrative Remedy Procedure." Id. at § .0310(c)(6).

The ARP also provides "a grievance may be rejected at any level if," among other things, "[t]he grievance concerns an action not yet take or a decision which has not been made," or "[t]here has been a time lapse of more than ninety (90) days between the event and the submission of the grievance." Id. at § .0306(c). If a response is not received at any step within the time for reply, this absence of a response is deemed a denial which the inmate may appeal. Id. at § .0307(f)(5).

The court first considers plaintiff's claim that his May 10, 2018, grievance, self-recorded as entry NC-28-1771, was "never processed or filed." See 2d Am. Compl. [D.E. 72-1] at ¶60; Pl.'s App., Ex. 8, [D.E. 118-1] at 84–90; Pl.'s Stmt. of Fact [D.E. 116] at ¶45.

Contrary to plaintiff's assertion, the record reflects this grievance was received on May 31, 2018, and given sequence number 07457. See Defs.' Resp. [D.E. 130-1] at 1. This grievance: discussed the transport incident; noted plaintiff wrote a letter to DPS Director Lassiter and Alexander C.I. Superintendent Beaver as to the transport incident on April 27, 2018; attached a copy of this letter; and requested for relief, *inter alia*, a DPS investigation and monetary damages "for [plaintiff's] pain, suffering, harm and injury caused by the excessive use of force in violation of the Eighth Amendment or alternatively negligence of NC-DPS employees [sic]." Id. at 1–2.

On May 31, 2018, screening officer Chris M. Biecker ("Biecker") rejected this grievance in a screening response as "already resolved" because "[t]his incident is being investigated" and "[n]o further action is required for grievance purposes." See Defs.' Resp. [D.E. 124-3] at 6.

The record also reflects that DPS began investigating the April 19, 2018, transport incident on May 30, 2018, after "the facility administrator" received plaintiff's letter. See Defs.' App.,

10

Ex. 3, [D.E. 109-7] at 1, 6. The investigating officer found no factual basis to support allegations of force. Id. at 1, 5. On October 17, 2018, the reviewing authority agreed with the investigating officer, found no factual basis to support allegations of force, decided no further action was required, and completed the investigation. Id. at 6–7. On October 18, 2018, Superintendent Beaver agreed with the findings. Id. at 8–9. On December 10, 2018, the Regional Director also agreed with facility management comments and recommended no further action. Id. at 9.

Plaintiff argues Biecker's May 31, 2018, screening response "is a sham" exhibit that was created after his May 3, 2019, transfer to Warren C.I., and that he did not receive until January 14, 2022, Pl.'s Sur-Reply [D.E. 128] at ¶¶11–12. The ARP, however, provides that the absence of response may be construed as a denial which may be appealed, see DPS ARP § .0307(f)(5), but plaintiff does not allege, and there is no evidence indicating, that he appealed this purported absence of a response. Thus, plaintiff fails to demonstrate these issues with his May 2018 grievance were a "dead end," an opacity, or a "machination, misrepresentation, or intimidation" preventing him from availing himself of grievance procedure. Cf. Ross, 578 U.S. at 642–44; see Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021) (applying Ross); Moore, 517 F.3d at 725 (noting "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively" (citation omitted)); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) ("The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant. But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (internal citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (holding, if

defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (noting plaintiff bears the burden of showing administrative remedies were unavailable (citing Moore, 517 F.3d at 725)); cf. Kaba v. Stepp, 458 F.3d 678, 685 (7th Cir. 2006); Hill v. O'Brien, 387 F. App'x 396, 401 (4th Cir. 2010) (per curiam) (unpublished); Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) (per curiam) (unpublished).

The court now turns to plaintiff's claim that his July 17, 2018, grievance, self-recorded as entry NC-33, was held until July 19, 2018, and then wrongly rejected as "already resolved" and exceeding the 90-day time limit. See 2d Am. Compl. [D.E. 72-1] at ¶60; Pl.'s Stmt. [D.E. 116] at ¶¶46–49; Pl.'s 2d Decl. [D.E. 128-1] at ¶¶7–10; Pl.'s Sur-Reply [D.E. 128] at ¶¶7–12.

Here, although plaintiff asserts that he delivered this grievance on July 17, 2018, the record reflects it was received on July 19, 2018, and given a sequence number of 08191. Defs.' Resp. [D.E. 124-3] at 30. The grievance: discussed the April 19, 2018, transport incident; noted plaintiff's April 27, 2018, letter to Director Lassiter and Superintendent Beaver about the transport incident; attached a copy of this letter; noted it was a re-submission of his May 10, 2018, grievance; and requested for relief, among other things, a DPS investigation and monetary damages "for [plaintiff's] pain, suffering, harm and injury caused by the excessive use of force in violation of the Eighth Amendment or, alternatively, negligence of NC-DPS employees [sic]." Id. at 30, 32.

12

On July 19, 2018, screening officer Biecker rejected this grievance in the DC-410 screening response, listing the following reasons: "Exceeds 90 day time limit"; "already resolved"; and "[t]his issue has been reported and is being investigated." See id. at 35.

Here, even if Biecker erroneously rejected this DC-410 as resolved and exceeding the 90-day limit, the rejection correctly stated that the transport incident investigation was ongoing. See DPS ARP § .0310(c)(6) ("[A] grievance may be rejected at any level if . . . [t]he grievance concerns an action not yet take or a decision which has not been made"); Porter, 534 U.S. at 524–25 (noting under the PLRA, "Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case").

Although plaintiff seeks to rely on Ross and Fordley v. Lizarraga, 18 F.4th 344, 352–53 (9th Cir. 2021) (finding grievance process effectively unavailable to inmate where prison never responded to emergency grievance), see Pl.'s Sur-Reply [D.E. 128] at ¶¶15–17, this case is substantially distinguishable. As discussed below, because the record does not support a finding that plaintiff either 1) grieved Biecker's purported erroneous rejection, or 2) grieved the transport incident after the investigation concluded on or about October 17, 2018, or otherwise contested the investigation result, see Moore, 517 F.3d at 725, he fails to demonstrate that this grievance rejection was a "dead end," an opacity, or a "machination, misrepresentation, or intimidation" preventing him from availing himself of grievance procedure, cf. Ross, 578 U.S. at 642–44, see id. at 641 ("The PLRA's history (just like its text) thus refutes a "special circumstances" exception to its rule of exhaustion."); Moss, 19 F.4th at 623.

The court now turns to plaintiff's contention that his August 30, 2018, grievance, self-recorded as entry NC-35, also was not processed. See 2d Am. Compl. [D.E. 72-1] at ¶60; Pl.'s

13

Stmt. [D.E. 116] at ¶50; Pl.'s App., Ex. 11, [D.E. 118-1] at 100–03. The exhibit on which plaintiff seeks to rely is a Form DC-410 which, he declares, he mailed directly to Superintendent Beaver. Pl.'s 2d Decl. [D.E. 128-1] at ¶¶13–14. The Form DC-410 states Alexander C.I. staff are violating Moore and the ARP because, in relevant part, his prior grievance with sequence number of 08191 was submitted within the 90-day limit, but improperly held until after 90 days by Alexander C.I. staff and then rejected as untimely by Biecker. See Pl.'s App., Ex. 11, [D.E. 118-1] at 100–03.

Unlike plaintiff's other grievances, this Form DC-410 lacks markings indicating that it was received–i.e. sequence and facility numbers and the signature and date of an accepting officer. See id. The court has reviewed grievances plaintiff submitted in the relevant time period. See Defs.' Resp. [D.E. 124-2] at 2, 12, 17, 38, 45, 51, 62, 66, 73 (DC-410 grievances fully exhausted between Mar. 1, 2017, and Feb. 5, 2019); id. [D.E. 124-3] at 1, 7, 16, 24, 28, 30, 36, 44, 51, 55 (DC-410 grievances not fully exhausted); [D.E. 130-1, 130-2] (legible copies of DC-410 grievances received on May 31 and July 19, 2018). This record does not reflect the existence of 1) any August 30, 2018, grievance, 2) any grievance alleging that plaintiff's prior grievance with sequence number 08191 was wrongly rejected, or 3) any grievance as to the transport incident after the investigation concluded or contesting the investigation result. See Moore, 517 F.3d at 725; see also Accardi v. Coley, No. 5:20-CT-3093-FL, 2021 WL 4591682, at *3 (E.D.N.C. Sept. 17, 2021) (finding an inmate failed to demonstrate the DPS ARP was unavailable pursuant to Ross where his grievance initially was rejected improperly but he 1) did not fully exhaust administrative remedies before filing the action, 2) exhausted numerous other grievances during the relevant time period, and 3) offered "no allegations or evidence suggesting he appealed the ultimate resolution of the . . . investigation"); aff'd, No. 21-7409, 2021 WL 6067227 (4th Cir. Dec. 20, 2021).

14

Plaintiff's claim that the DPS ARP was "unavailable" to him also is belied by his successful Step-3 exhaustion of nine roughly contemporaneous grievances. See Defs.' Resp. [D.E. 124-1]; id. [D.E. 124-2] at 1–75; see also Moss, 19 F.4th at 623; Accardi, 2021 WL 4591682, at *3.

After considering the record evidence and the inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, the court finds that, regardless of the potential merit of plaintiff's underlying claims, defendants have pleaded and proved that plaintiff failed to exhaust administrative remedies before filing the instant action, see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but plaintiff fails to demonstrate that grievance procedure was "unavailable" to him, see Ross, 578 U.S. at 643–44; Moss, 19 F.4th at 623; Moore, 517 F.3d at 725; see also Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Defendants have met their burden of demonstrating the absence of a genuine issue of material fact as to exhaustion, Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted), and defendants are entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85. Further, because the court dismisses the action without prejudice, see Booth, 532 U.S. at 735; Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (finding dismissal without prejudice appropriate when inmate fails to exhaust administrative remedies), the court need not address defendants' alternative augments.

15

Conclusion:

In sum, the court: DENIES AS MOOT plaintiff's motion for an extension of time to file a sur-reply [D.E. 129]; DENIES plaintiff's motion for relief [D.E. 131]; GRANTS defendants' motion for summary judgment [D.E. 86]; and DISMISSES WITHOUT PREJUDICE the complaint for failure to exhaust available administrative remedies. The clerk shall close the case.

SO ORDERED, this 16th day of March 2022.

*Richard E. Myers II*
RICHARD E. MYERS II
Chief United States District Judge

16

Case 5:19-ct-03040-M Document 134 Filed 03/16/22 Page 16 of 16