UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO. 5:19-CT-03040-M

|  |  |  |
|---|---|---|
| MATTHEW JAMES GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF** |
| v. | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| SGT. DAVES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Darren Daves and Joseph Parlier (collectively "Defendants"), by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion of Summary Judgment. Defendants have moved the Court for summary judgment as to all claims on the grounds that the pleadings, affidavits, and other record evidence establish that there are no genuine issues of material fact and that they are entitled to prevail as a matter of law. The record evidence establishes that Defendants did not use excessive force on Plaintiff or otherwise violate his constitutional or other rights under federal or state law. Moreover, Defendants are entitled to prevail as a matter of law based on sovereign and qualified immunity.

## I.     THE NATURE OF THE CASE

Matthew James Griffin ("Plaintiff"), a pro se prisoner of the State of North Carolina, commenced this action by filing a Complaint on February 5, 2019, alleging excessive force, due process violations, deliberate indifference, and a violation of

Plaintiff's Eighth Amendment Rights. [D.E. 1] Plaintiff is a New Mexico citizen who was convicted in that state of felony murder, armed robbery, and aggravated burglary and who was incarcerated in North Carolina state prisons pursuant to an interstate compact. On April 23, 2019, the Court completed its frivolity review and granted Plaintiff's Motion to Amend Complaint and ordered the Clerk to continue management of the case. [D.E. 10] On September 25, 2019, an Answer was filed on behalf of Defendant Darren Daves denying all material allegations. [D.E. 24] On September 10, 2020, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, replacing the John Doe defendant with Joseph Parlier. [D.E. 72] On January 7, 2021, the Order granting Plaintiff's Motion for Leave to File a Second Amended Complaint and granting Plaintiff's Motion to Substitute Party was issued. [D.E. 73] A Request for Waiver of Service of Summons was issued for substituted Defendant Joseph Parlier on January 7, 2021. [D.E. 74] On March 8, 2021, the Waiver of Service of Summons was returned executed for Joseph Parlier. [D.E. 78] Defendants' Answer to Plaintiff's Second Amended Complaint was filed on May 9, 2021. [D.E. 81] On May 18, 2021, an Order was issued lifting the stay and ordering dispositive motions to be filed on or before June 8, 2021. [D.E. 82] On July 12, 2021, the Court entered an Order granting Defendants' motion and ordering that dispositive motions be filed on or before July 12, 2021. [D.E. 85]

On July 12, 2021, Defendants filed their Motion for Summary Judgment. [D.E. 86] Plaintiff responded to it. [D.E. 103; D.E. 120] On March 16, 2022, after additional

briefing, the Court granted Defendants' Motion for Summary Judgment, finding that Plaintiff had failed to exhaust his administrative remedies. [D.E. 134]

Plaintiff appealed the dismissal to the Fourth Circuit, which vacated and remanded. [D.E. 137; D.E. 148] Thereafter, Plaintiff filed a Motion on Remand to Correctly Apply North Carolina's Administrative Remedy Procedure to the Facts of this Case. [D.E. 151] Defendants responded to that motion. [D.E. 155]

On July 3, 2024, the Court entered an order stating that it remains unclear whether Defendants intended to rely upon Plaintiff's purported failure to exhaust his administrative remedies as an affirmative defense, and directed Defendants to file an additional response to Plaintiff's motions by July 24, 2024. [D.E. 159] On August 7, 2024, Defendants filed a response seeking to withdraw, without prejudice to replead, failure to exhaust administrative remedies as an affirmative defense. [D.E. 163]

On November 15, 2024, the Court entered an order lifting the prior stay on the dispositive motion deadline and directed that dispositive motions be filed by January 10, 2025. [D.E. 165]

## II.    STATEMENT OF THE FACTS

### *Plaintiff's Factual Allegations*

Plaintiff alleges that on April 19, 2018, Defendants used excessive force against him and were deliberately indifferent to his medical needs. [D.E. 1] Specifically, Plaintiff alleges that the excessive force occurred during a vehicle transport from Central Prison in Raleigh to Alexander Correctional Institution in

Taylorsville, North Carolina, approximately 170 miles away. Plaintiff alleges that during transport "the seatbelts became so tight that Plaintiff was unable to draw a full breath… this caused Plaintiff to begin to hyperventilate." [D.E. 1 at 14] Plaintiff also alleges that during the transport "Plaintiff lost consciousness multiple times" after which Plaintiff alleges he requested that Defendants take him to a hospital for medical evaluation and treatment which Plaintiff alleges they denied to do. [D.E. 1 at 15-18].

### *Defendants' Summary Judgment Evidence*

On April 19, 2018, Defendants were assigned to transport Plaintiff from Central Prison in Raleigh, North Carolina, to Alexander Correctional Institution in Taylorsville, North Carolina. [D.E. 109-5 at 1; and D.E. 109-5 at 3] Defendants were both employed with the N.C. Department of Public Safety ("DPS") as Sergeants and both were members of the Prison Emergency Response Team ("PERT"), therefore they were occasionally required to transport dangerous individuals. [D.E. 109-1 at 1; 109-5 at 1, 4; and D.E. 109-6 at 1]

Defendants Darren Daves and Joseph Parlier are both familiar with the DPS policies regarding Transporting Inmates, Conduct of Employees and Use of Force. [D.E. 109-2; D.E. 109-3; and D.E. 109-4] Following this incident, Defendants each provided a full written statement. [D.E. 109-5 at 1-6]

When Plaintiff was placed in the vehicle, he stated to Defendants that since he was on self-injurious behavior status ("SIB") that he could hit his head against the window bars. Defendants thus moved Plaintiff to the middle of the backseat of the

car. The seatbelt for Plaintiff was secured and the inmate stated that he could still move on a sharp turn and hit his head; therefore, a second seat belt was used to secure the Plaintiff so that he could not purposely hit his head. [D.E. 109-5 at 1; and D.E. 109-5 at 4]

During the above-described event, the only hands-on interaction with Plaintiff by Defendants was an attempt to prevent Plaintiff from injuring himself, in accordance with DPS Policies and Procedures. [D.E. 109-1 at 2; and D.E. 109-6 at 2] During transport, Plaintiff turned his hands to manipulate the tightness of the handcuffs which changed the color of Plaintiff's skin. [D.E. 109-1 at 3; and D.E. 109-5 at 2]  Once extra security was in place, Defendant Daves corrected the position of the handcuffs.  [D.E. 109-5 at 2] During the above-described event, at no time did Darren Daves or Joseph Parlier use excessive force on Plaintiff or fail to address his medical needs. [D.E. 109-1 at 3; and D.E. 109-6 at 3]

During the above-described event, at no time did Darren Daves or Joseph Parlier witness any correctional staff use excessive force on Plaintiff or fail to address his medical needs. [D.E. 109-1 at 3; and D.E. 109-6 at 3] During the above-described event, at no time did Darren Daves or Joseph Parlier use any more force than was necessary to obtain a proper correctional objective pursuant to DPS Policy. [D.E. 109-1 at 3; and D.E. 109-6 at 3] During the above-described event, at no time did Darren Daves, nor any correctional staff, engage in conduct which violated the DPS Policies and Procedures. [D.E. 109-1 at 3; and D.E. 109-6 at 3]

### *DPS Investigation of Plaintiff's Claims*

Upon receipt of Plaintiff's April 27, 2018, letter, an investigation was immediately conducted into the alleged incident and absolutely no evidence was found to support Plaintiff's claims. [D.E. 109-7 at 1] As part of this investigation, witnesses were interviewed and documents in possession of NCDPS were collected. [D.E. 109-7 at 1-3]

After the investigation, Plaintiff's claims of excessive force were not found to be substantiated. [D.E. 109-7 at 4] Upon information and belief, Plaintiff had previously made numerous other allegations and formal grievances which were also determined by NCDPS to be false. [D.E. 109-8 at 1-76] Defendants maintain that Plaintiff's allegations of excessive force were never substantiated and therefore there has been no violation of Plaintiff's constitutional rights.

In the witness statements, it was shown that on April 19, 2018, Plaintiff was transported from Central Prison in Raleigh to Alexander Correctional Institution in Taylorsville, North Carolina, approximately 170 miles away. Plaintiff stated to the guards he was on SIB ("Self Injurious Behavior") and that he could hit his head against the window bars if placed too close. [D.E. 109-5 at 1, 4] Due to this statement, Plaintiff was moved to the middle of the backseat of the vehicle. The seatbelt was secured, but Plaintiff stated that he could still move on a sharp turn and hit his head. [D.E. 109-5 at 1, 4] In response to Plaintiff's statement, a second seatbelt was used to secure the inmate so that he could not purposely hit his head. [D.E. 109-5 at 1, 4] Plaintiff subsequently asked if the guards would take both seat belts off so that he

6

could lie down and go to sleep. [D.E. 109-5 at 1-2, 4-5] This request was denied for safety concerns and Plaintiff responded: "Do you know how hard it is to sleep sitting up, it's a three-hour drive sarge." [D.E. 109-5 at 1-2, 4-5]

It was found that the transport vehicle did stop for gas and during the stop, it was observed by Defendant Daves that Plaintiff had turned his hand to manipulate the tightness of the handcuff. [D.E. 109-5 at 2]. Plaintiff had also asked to be taken back to Central Prison because he did not want to go back to Alexander Correctional Institution. Once extra security was in place, Plaintiff's handcuffs were corrected and the guards told Plaintiff to stop manipulating the tightness of the handcuffs. [D.E. 109-5 at 2]

It was determined that later in the transport, Plaintiff again manipulated the tightness of the handcuff. The transport vehicle stopped, Defendants observed Plaintiff's hands, and Plaintiff was told again not to manipulate the tightness of the handcuffs. [D.E. 109-5 at 2] At no time did the guards observe Plaintiff "pass out" and Plaintiff never stated to the guards that he passed out or that he was having problems breathing. Plaintiff was very talkative during the transport. When Plaintiff arrived at Alexander Correctional Institution, only then did Plaintiff announce that he had passed out during the transport. Plaintiff also stated at this time that he was on a hunger strike that he had begun while at Central Prison. [D.E. 109-5 at 2-3]

### III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, [and] interrogatory answers" show "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the non-moving party cannot rest on bare pleadings alone, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A district court should grant summary judgment when the record as a whole could not support a reasonable jury returning a verdict for the non-moving party. *See id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An otherwise properly supported motion for summary judgment will not be defeated by the existence of any factual dispute; only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *See id.* at 248–49. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue then there is no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* at 323.

"Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence in support of' the nonmoving party's case. *Thompson v. Potomac Elec.*

*Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quotation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (1986) (noting that a mere scintilla of evidence is not sufficient). Thus, a nonmoving party who relies on mere belief or conjecture, or the allegations and denials contained in his pleadings, cannot avoid summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003), *cert. denied*, 541 U.S. 1042 (2004).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[T]he plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (reversed, in part, on other grounds); *Celotex*, 477 U.S. at 323–24, ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

9

# IV. ARGUMENT

## A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO ANY CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES

It is unclear from the pleadings on what basis Plaintiff attempts to sue Defendants in their official and individual capacities. However, to the extent Plaintiff attempts to sue Defendants in their official capacities, such a claim fails as a matter of law. A lawsuit filed against a state official in their official capacity is essentially an action against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The law is clear, neither a state nor an official acting in an official capacity is a "person" subject to suit under 42 U.S.C. § 1983. Furthermore, the Eleventh Amendment generally bars claims against states in state or federal courts. *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). While Congress can abrogate the states' sovereign immunity, it has not done so with regard to claims under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIMS

Plaintiff's excessive force claims stem from an allegation of physical force. Plaintiff alleges that during transport "the seatbelts became so tight that Plaintiff was unable to draw a full breath... this caused Plaintiff to begin to hyperventilate." [D.E. 1 at 14] Plaintiff also alleges that during the transport "Plaintiff lost consciousness multiple times" after which Plaintiff alleges he requested Defendants

10

to take him to a hospital for medical evaluation and treatment which Plaintiff alleges they denied to do. [D.E. 1 at 15-18]

The record evidence demonstrates that in this instance an appropriate and reasonable measure of force was used in direct response to Plaintiff's actions and prevent self injurious behavior ("SIB") [D.E. 109 at 3-6] Thus, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

### 1. Components of an Excessive Force Claim.

When an inmate When an inmate brings an excessive force claim against prison officials, the court must determine "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986). "Eighth Amendment analysis necessitates inquiry as to whether the prison officials acted with a sufficiently culpable statement of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Regarding the subjective component, the Supreme Court identified the following factors that the Court is required to consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the threat…reasonably perceived by the responsible official"; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S.

11

at 321. In considering these factors, the Court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). Therefore, the Court is required to consider the reasonableness of the officer's conduct not with 20/20 hindsight but from the perspective of a reasonable officer on the scene." *Id.* In addition to the above factors, the Supreme Court noted the following:

> In making and carrying out decision involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

*Whitley*, 475 U.S. at 320. The Supreme Court went on to state that "prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Id.* at 321-322. And lastly, it stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322. As shown by the below discussion of the four factors, this case should not go to the jury.

## 2.  Applying the Whitley Factors.

The record evidence, even when viewed in a light most favorable to Plaintiff, does not support the subjective component of an excessive force claim as it relates to

12

any of the alleged use of force incident. Plaintiff's allegations imply that he was physically assaulted without provocation or justification. However, the record evidence reveals that restraints and supposed use of force incident was appropriate and reasonable measure of force taken in direct response to Plaintiff's actions. This conclusion is best illustrated by applying the *Whitley* factors to the alleged use of force incident.

### 3. Defendant Daves' Use of Force was not an Unconstitutional Application of Force

Plaintiff's sparse allegations that Defendant Daves used excessive force, but the summary judgment evidence indicates that instances of force used by Defendant Daves were reasonable and appropriate measures of force.

Accordingly, the first *Whitley* factor weighs in favor of Defendants. The amount of force used by Defendants in this instance was not more than was necessary. Thus, the subject use of force was proportionate to the need to apply force and the second factor also weighs in favor of Defendants. The fact that Plaintiff is unable to show any evidence of a significant injury suggests that the third *Whitley* factor should likewise weigh in favor of Defendants.

Given Defendants perception that Plaintiff posed a threat to the safety and security of them and others, the fourth *Whitley* factor should weigh in favor of Defendants. Accordingly, Plaintiff cannot present any evidence sufficient for a reasonable jury to conclude that Defendants supplied force in this instance sadistically or maliciously for the very purpose of causing harm. Therefore, Defendants use of force was not excessive and did not violate the Eight Amendment.

13

The District Court for the Eastern District of North Carolina has weighed the *Whitley* factors in favor of correctional staff. *See Griffin v. Norris*, No. 5:15-CT-03193-D, 2018 U.S. Dist. LEXIS 139838, at *4-5, 10-12 (E.D.N.C. July 23, 2018) (after applying the *Whitley* factors, this Court granted summary judgment for defendants where the evidence indicated that force, was used in response to the plaintiff resisting an escort); *Sears v. United States*, No. 5:12-CT-3078-BO, 2015 U.S. Dist. LEXIS 91235, at *8 (E.D.N.C. July 13, 2015) (after applying the *Whitley* factors, this Court granted summary judgment for defendants where the evidence indicated that the force, was used for compliance purposes and not in a malicious and sadistic manner, despite the plaintiff's allegations that the defendants violently assaulted him, including pinching and piercing his wrists, and twisting the handcuffs).

### 4. Plaintiff's version of events is not supported by the evidence.

Plaintiff's version of events is not supported by the record evidence. The testimonial evidence of Defendants demonstrates that Plaintiff's narrative of the events are not supported by any forecast of evidence. Specifically, Plaintiff's claim that during transport "the seatbelts became so tight that Plaintiff was unable to draw a full breath . . . this caused Plaintiff to begin to hyperventilate." [D.E. 1 at 14]. Plaintiff also alleges that during the transport "Plaintiff lost consciousness multiple times" after which Plaintiff alleges he requested that Defendants take him to a hospital for medical evaluation and treatment, which Plaintiff alleges they refused to do. [D.E. 1 at 15-18] These claims are wholly unsupported by the evidence. [D.E. 109 at 3-6; and 45-48]

14

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott*, 550 U.S. at 380. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## B. PLAINTIFF FAILS TO ESTABLISH DELIBERATE INDIFFERENCE BY DEFENDANTS DAVES AND PARLIER

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. The record evidence, however, indicates that Defendants are entitled to summary judgment for three reasons. First, Defendants were not directly involved in any relevant medical decisions related to Plaintiff and thus cannot be liable under § 1983. Additionally, Plaintiff's attempt to impute any alleged (but denied) liability of others to Defendants fails as a matter of law. Lastly, Plaintiff cannot present any evidence that Defendants were actually aware of any serious medical need and the attendant risks thereof. Nor can Plaintiff demonstrate that despite this knowledge, Defendants nonetheless consciously ignored such risks. Thus, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor on his deliberate indifference claim against Defendants. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

### 1. Components of a Deliberate Indifference Claim

In the prison context, medical care is a basic human need, the deprivation of which, under certain circumstances can form the basis of an Eighth Amendment

violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment forbids 'deliberate indifference' to a prisoner's 'serious medical needs.'" *Oliver v. Daniels*, No. 5:16-CT-03101-FL, 2019 U.S. Dist. LEXIS 168331, at *32 (E.D.N.C. Sep. 30, 2019) (*citing Estelle*, 429 U.S. 97, 104). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first requirement is the deprivation of an objectively "sufficiently serious" basic human need. *Id*. The second requirement is a "sufficiently culpable state of mind" or stated differently, "deliberate indifference" to inmate health or safety. *Id*. "Deliberate indifference sets a particularly high bar to recovery." *McClary v. Lightsey*, No. 5:16-CT-3052-BO, 2019 U.S. Dist. LEXIS 181912, at *9 (E.D.N.C. June 17, 2019) (*quoting Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

"Only extreme deprivations are adequate to satisfy the objective component . . . to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotations and citations omitted). Under the second requirement, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775

F.3d 170, 178 (4th Cir. 2014) (emphasis in original). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

### 2.    Defendants were not Involved in Providing Patient Care and Therefore Cannot be Liable Under Section 1983.

Defendants' lack of involvement in Plaintiff's medical care is fatal to Plaintiff's claim of deliberate indifference to a serious medical need. The Supreme Court has stated that deliberate indifference can be "manifested by [medical staff] in their response to the prisoner's needs or by [custody staff] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff has not sufficiently demonstrated that Defendants were involved in any deprivation of his rights. Plaintiff does not allege that Defendants responded to a particular medical need of his in any particular manner. Instead, he contends that Defendants were deliberately indifferent to his serious medical needs because they failed to transport him to a medical facility as requested.

In short, Plaintiff's effort to impose § 1983 liability on Defendants based on an allegation that they were aware of inadequate medical care is insufficient and fails as a matter of law. Additionally, despite his allegation that Defendants somehow

17

thwarted the care provided by others, Plaintiff has failed to produce any record evidence to support this assertion. On this record, Plaintiff will be unable to present any credible evidence that Defendants were actually involved in the deprivation of his right to adequate medical care. Therefore, there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

### 3. Plaintiff cannot present Sufficient Evidence to Support the Subjective Element of his Deliberate Indifference Claim.

Plaintiff's bald assertions are insufficient to satisfy the subjective component of a deliberate indifference claim. As noted above, deliberate indifference requires subjective knowledge by the defendants of a serious medical need and the health risks associated therewith. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Plaintiff does not allege and cannot demonstrate that Defendants were specifically and actually aware of any particular medical need, let alone that the need was serious, and that it carried certain attendant health risks. To survive summary judgment on a deliberate indifference to serious medical needs claim, Plaintiff must present evidence sufficient to show that Defendants actually knew of a serious risk of harm and nonetheless chose to disregard the risk.

The record evidence demonstrates that Defendants were was not involved or knew of any serious medical need. On this evidence, Plaintiff cannot show that Defendants were actually aware of a serious medical need and its related risks to Plaintiff health. Moreover, Plaintiff cannot show that Defendants disregarded those risks despite such knowledge. On this evidence, Plaintiff will be unable to present any credible evidence to support the necessary subjective component of his deliberate

18

indifference claim. Therefore, there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

## C.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001), *cert. denied*, 537 U.S. 1045 (2002) (internal quotations omitted). Qualified immunity's fundamental purpose is intended to give "government officials breathing room to make reasonable but mistaken judgments" and protect "all but the plainly incompetent or those who knowingly violate the law" from the costs of suit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations marks omitted). A right is "clearly established" where the contours of that right are sufficiently clear so that a reasonable defendant would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Thus, even if a plaintiff demonstrates a constitutional violation, an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position "could have failed to appreciate that his conduct would violate those rights." *Meyers v. Baltimore County, Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (citation and internal quotation marks omitted).

Even if Plaintiff could establish a constitutional violation, which Defendants assert he cannot, Defendants would nonetheless be entitled to qualified immunity. The record evidence establishes that Defendants did not use excessive force or any force for that matter and were not deliberately indifferent to Plaintiff's medical needs.

Therefore, Defendants did not violate Plaintiff's constitutional rights. Accordingly, on this evidence, no reasonable fact finder could find that the conduct of Defendants violated a clearly established constitutional right of Plaintiff. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

## V.    CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Motion for Summary Judgment be granted and that all claims asserted in this action against them, including all individual and official capacity claims, be dismissed.

Respectfully submitted this the 10th day of January 2025.

JEFF JACKSON
ATTORNEY GENERAL

/s/ Richard A. Paschal
Richard A. Paschal
Special Deputy Attorney General
N.C. State Bar No. 27300
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh NC  27602-0629
Telephone:   (919) 716-6425
Facsimile:   (919) 716-6761
E-mail:  rpaschal@ncdoj.gov

20

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court utilizing the CM/ECF system, and I further certify that I served the foregoing on all non-CMF participants by depositing a copy of the foregoing in a sealed envelope with the U.S. Mail, addressed as follows:

> Matthew James Griffin
> #Y53580
> Lawrence Correctional Center
> 10930 Lawrence Road
> Sumner, IL  62466
> *PRO SE*

Respectfully submitted, this the 10th day of January, 2025.

/s/ Richard A. Paschal
Richard A. Paschal
Special Deputy Attorney General